The floor is yours. Thank you, May it please the Court, I am Robert Muce, it is my honor and privilege to represent the plaintiff's appellants in this important case, I'm going to reserve two minutes of my time for rebuttal. When the Chief Law Enforcement Officer for the State of New York falsely and very publicly at a press conference where she invited people and organizations who share her animosity towards pro-lifers declared that you are a terrorist and that you belong to a terrorist group. These false declarations are defamatory per se and they cause reputational harm as a matter of fact and law for standing purposes. So here you have the New York Attorney General has placed the power of the government with its authority, presumed neutrality and assumed access to all the facts including whether facts exist to claim that plaintiffs are terrorists behind a designation intended to reduce the effectiveness of the Red Rose Rescue and its pro-life efforts which are protected by the First Amendment. I just want to ask a question, you're describing the statements that were made about your clients and there's never in your brief sort of a clear enumeration of here's the list of statements we're talking about. So I want to make sure I understand which statements you're saying consist of calling your clients terrorists. I have three listed that I found in the video and one is the one at eight minutes when Attorney General James says it's my duty and my honor and my responsibility to keep individuals safe from terrorists and that's what they are? Is that one of them? It is, Your Honor. All right. And then I see one in a question and answer period. You don't actually hear the question. We might infer what the question is about. The answer is they haven't been designated as such. I refer to them as terrorists because of their activities. Is that the second one? That's part of it, Your Honor. And then I have another answer, again, question not clear. This will apply to this terrorist group but it's also important to note that there is a law in the state of New York that individuals cannot engage in harassment of those receiving reproductive health care. Are there any other statements that you are saying constitute calling your clients terrorists? Your Honor, I think there's a pretty good recitation of this on page six, actually, of the response brief where, and again, there's no question that the reference to the individuals who belong to Red Rose Rescue were referenced as terrorists and Red Rose Rescue itself was a terrorist group. And with the Attorney General, this is based on the declaration that they submitted, threatening staff and clinicians and terrorizing patients. I'm sorry, can you just, just to go back to my question, are those the three statements? Or is there some other statement in the record that you're going to point me to? Or are you just going to tell me to read someone else's brief? No, Your Honor, the reference is to the using the term terrorist and terrorist group. No, no, but you're here representing specific clients, and so it's important that we understand the way in which the use of that term was applied to your clients. And that gets very weedy. We need to look at the, we don't, the fact that you used the words terrorist isn't going to answer this case for us. And so I want to make sure I'm not overlooking something that's important for me to see in order to address that. And I think you've answered my question that there aren't, those are the three times that we should be looking at. Yes, Your Honor. But if you look at, look at the cases, Parsons. No, no, no, no, no. Counsel. I'm sorry, but you know, you've been asked a very simple question. The question is, when was the word terrorist or terror used? And the presider has given you three examples. Is there a fourth time or isn't there a fourth time? Then you can go on and tell us what's wrong with the world. But would you answer that question?           Yeah, no, Your Honor. I mean, the video is what it is. I mean, those are the, I don't, I don't have the specific date, you know, times of the video, but certainly it's. Was it, did it happen more than three times? Did she? No, Your Honor, it's, it's happened as it was, as it was stated in the video. And I, and I believe the, the Your Honor has, has stated it correctly. Thank you. Counsel, could I just ask you one follow up? There's, there was also the response to the video.   And the response that's apparently a question, whether Red Rose Rescue has been designated as a terrorist group. And the answer was they haven't been designated as such, which was the preliminary to one of the other answers that, that you've identified. Is that part of the allegation? Yeah. And she said, I refer to them as terrorist groups because of their activities. And what she described as their activities. I'm sorry. So is that a fourth or included in the three? I, I believe that was one of the ones that she, that the, the first judge referenced,  Okay. I believe that was one of the, one of the ones that was referenced. They, when she said that she didn't, they weren't, she described them as terrorist groups. She said they are officially designated, but she describes them as such because of their activities. And in the video, she, the activities that she referenced was, were threatening staff and clinicians and terrorizing patients. Terrorized patients waiting for their appointments. Terrorized the clinic. And then she said it was her responsibility to keep individuals safe from terrorists. And that's what they are. And she said they're a terrorist group because of their activities. Okay. But, but the. That's, that's in the record. The references to terrorizing patients and all those were, were describing specific incidents in which individuals unlawfully entered clinics and disrupted the provision of services. I don't understand that your clients were identified as participants in those activities. Are you alleging that the Attorney General's reference to that conduct as terrorizing patients implicated your clients as terrorists? It does, Your Honor. Because those were, those were general statements about the Red Rose, about the Red Rose Rescue. And again, and I, you know, I want to bring it to the cases. When you look at McGrath, you look at Parsons, and you look at Meeks. Right? The terms were political propaganda. The, the, the communist was one of the, a hybrid gang. When you look at Parsons, and now I think there's a distinction between, you know, whether the oven concerning for defamation or the derogatory title that could affect, or designation that could affect constitutional rights. Because in, in the Parsons case, the hybrid gang, no individual was mentioned. They just, they were self-identified as members of the Juggalos, which was part of the hybrid gang. And it was the designation by the government as a hybrid gang that was sufficient. It was the designation of the government as communist that was sufficient. It was the designation by the government that the video that Meeks was going to show, that Keene was going to show in the Meeks v. Keene case, was political propaganda. And all of those designations by the government were far removed than the more specific ones here, were sufficient to have standing to bring the constitutional claims. And when you look at the, and so that's the identification for standing for the constitutional claims. When you look at the oven concerning element for defamation, and this is what this court said in the Elias case, the reading public acquainted with the parties and the subject would recognize the plaintiffs as persons to whom the statements refer. The complaint that the attorney general was referring to listed Monica Miller in the complaint. She wasn't one of the defendants.  They actually served. Counsel, could I just ask you a question about that? Yes, sir. Every New York State case that dealt with the word terrorist has apparently found that it was not defamatory because it was a statement of opinion. Are there, and I know you point to out-of-state cases, but is there any New York State case that has described the word terrorist as defamatory per se or defamatory? No, Your Honor, and obviously you have to look at the context of those. One was an environmental newsletter referring to. Hold on, hold on, hold on. For purposes of the defamation claim, this is a question of New York State law, right? It is. And every appellate division decision that has looked at that term in context has said it's not defamatory. So why aren't those cases binding on us? Because it's in context, Your Honor. None of those cases were the New York attorney general declaring somebody very publicly as being a terrorist and belonging to a terrorist organization. That's a significant difference than a private party's in a blog making comment towards another private party or in an environmental newsletter, these are the two cases, an environmental newsletter where they claim that filing a lot of lawsuits is terrorism. Okay, hold on. One other question on this. Why wouldn't it be fair to say that the facts on which the attorney general made the statement were fully set out? Your Honor, when these disclosed facts. You may disagree with the facts, but the context, if you will, to lead to that term were set out both in the press conference and in the complaint, weren't they? Your Honor, in the press conference, what the disclosed facts were, were facts of terrorism. All it does is it supports the defamatory nature of the actual allegations. She wasn't saying that it's because of a public lawsuit. Hold on. Hold on. You don't you don't you don't dispute that the facts as such. You may dispute the characterization, but the facts you don't dispute the contextual facts. It wasn't an opinion that was based on some hidden facts or so. So you may disagree with the facts, but you haven't put that in the brief. But the facts that were the basis for the opinion were set out. Your Honor, if the if the facts if the facts of saying somebody's a terrorist is that they're threatening staff and terrorizing patients, those those aren't disclosed facts other than an affirmation that it was the the using the word terrorist in the criminal context. So this isn't a case where there's disclosed facts that minimizes or undermines the claim that this was a an allegation of a of accusing somebody of a heinous crime. Just the opposite to say that while the disclosed facts are that they terrorize and threaten patients, that that somehow makes terrorists an opinion as opposed to an assertion by the top law enforcement officer of the state that these people engage in terrorist acts, a heinous crime under state law and under federal law. And to allege to accuse somebody of a crime is defamation per se as a matter of New York state law. Those other cases with the term terrorist, the context matters. It matters immensely, as we know from the case law. OK. That's the point. The question is to read it in context, right? Yes. I think unless there are other questions from my colleagues that it looks like you've reserved some time. So we'll hear from you again. So now we'll shift to Attorney Kiernan. May it please the court, Beasley Kiernan for the Attorney General. The district court correctly dismissed plaintiff's constitutional and defamation claims and this court should affirm. Turning first to the defamation claim, as the district court held, the Attorney General's statements were non-actionable statements of opinion. As Your Honor noted, New York courts have repeatedly held that calling someone a terrorist is likely to be perceived as rhetorical hyperbole or a vigorous epithet. Did she call his clients terrorists? It seems to me that there's an assumption about the facts that sort of flows through the legal argument here that I'm still trying to nail down. Is this a group libel theory? Is that how we're getting to these individuals who weren't involved in the clinic incidents that gave rise to this are implicated? And that goes to the other concerning element of plaintiff's defamation claim. It's true. Attorney General James did not mention plaintiffs by name during her press conference. She discussed certain incidents in New York State. Those incidents did not involve plaintiffs at all. But I think the theory is that by associating this organization with the label terrorists, that that causes constitutional injury to anybody affiliated or known to be affiliated with that group. And I'm just wondering what, right, that's, I think, got to be the theory. And I'm sure Mr. Mews will correct me if I'm wrong in that. How does that work? Why isn't that enough of an injury? There is a small, just sticking with defamation, there is a small group defamation doctrine. But plaintiffs don't allege sufficient facts to support that kind of theory. They don't allege that Red Rose Rescue is, in fact, a small group. It may have hundreds or thousands of members. And there's no allegation that the Attorney General's statements apply to plaintiffs in particular. The district court didn't rely on that, right? No, the district court said based on this complaint, reading it broadly, I'm not going to hold that you fail to allege this element. Because the district court couldn't determine how many members there were of Red Rose Rescue. That's right. The district court observed that there are at least 30 members because the Attorney General's complaint mentions 30 members of the group. It's not exactly the most, the clearest way to approach this because it's 30, it's 40, oh, we've seen as much as 60. It's better to go elsewhere, I suspect. That's right. It's not exactly clear. It was the plaintiff's burden to allege small group defamation. That's the theory they're pursuing. I'm just saying in our approach, there are other ways that are better. There really are cases that say 30 and 60, and we don't want to have to pick amongst them. No, there's no need for Your Honors to reach that particular element. As I began this argument, the Attorney General's statements were not unactionable opinions under well-settled New York case law. And in context, it's just not plausible to infer from the allegations and the complaint and the video that a reasonable person would perceive the Attorney General as accusing plaintiffs, who, again, she didn't even name, of committing a terrorism-related offense. Instead, the only plausible inference is that the Attorney General was using terrorism in its colloquial sense, the use of terror as a means of coercion. And she even expressly clarified during the Q&A session of the press conference, I'm not designating Red Rose Rescue as a terrorist group as such. Instead, I'm referring to them as terrorists because of their activities, specifically trespassing on reproductive health care clinics and terrorizing patients and staff. So plaintiffs failed to allege that the Attorney General actually made any false statements about plaintiffs. For the same reason, they have failed to allege defamation per se, because, again, she did not accuse plaintiffs of criminal conduct. And for those reasons, we urge the Court to affirm the dismissal of the defamation claim. You argue in your brief that the statements were privileged. You didn't raise that argument below, did you? We did not raise that argument below. That's an affirmative defense that we do have the burden to establish. We didn't argue it in our motion to dismiss. So why wasn't—I'm sorry, you did raise it? We did not raise it in the motion to dismiss, no. So why isn't it waived? There's no need for Your Honors to reach it. If you want to affirm on other grounds, that makes the most sense. We couldn't affirm on a ground that you waived. It's not waived because, again, it's an affirmative defense that you might have to raise for the first time in an answer. And if there's no need for further factual finding, the Court could reach that issue in the exercise of its discretion. But there's no need to do that. There are other grounds on which to affirm the dismissal of the defamation claim. Turning back to the constitutional claims, the Court may affirm on any of three independent grounds, lack of standing, Eleventh Amendment immunity, and failure to state a claim. On standing, plaintiffs try to allege reputational injury, and concrete allegations of reputational injury may suffice to state an injury in fact. But plaintiffs just provide no concrete allegations of reputational injury here. They merely state in very conclusory terms that the Attorney General's statements harmed their public reputation. That's not enough to satisfy Article III. And the cases that plaintiffs mention are distinguishable in that respect. Parsons is a Sixth Circuit case. There, the plaintiffs allege improper stops, detentions, interrogations, denial of employment, all fairly traceable to the Department of Justice, designating their group as a gang. In Meese, the plaintiff pointed to a public opinion poll, a report from an expert saying that the plaintiff's likelihood of electoral success would be diminished because of the government's actions, calling the exhibition of films political propaganda. Here, plaintiffs, again, only allege in very conclusory terms that the Attorney General harmed their public reputation. That's not enough. Plaintiffs also fail to allege a risk of future injury as required for standing to seek the prospective relief the complaint seeks. But that wouldn't knock out their claim for damages. They're seeking damages only under a defamation theory. They're not seeking damages under one of their constitutional claims. They're very clear about that in their complaint. They're only seeking injunctive and declaratory relief for alleged constitutional violations. So they fail to allege any risk of future injury. And they fail to allege any ongoing violation of law by the Attorney General. That's what's required for an injunction under Ex Parte Young. And plaintiffs merely speculate that the Attorney General will continue to make similar statements in the future. That's not enough under Ex Parte Young. And their request for declaratory relief is entirely backward-looking. They seek a- So if the Attorney General did it again, that would make a viable claim? Well, there may be a viable claim for damages, but to seek injunctive or declaratory relief, they have to plausibly allege a policy or practice of doing that. If they have another example of the Attorney General making similar statements, that may suffice. So if the Attorney General does it again, there could then be a suit? This is the second time? That could be, Your Honor, yes. If there's some allegation of a policy or practice that she continues to describe plaintiffs as terrorists. Now, she never described plaintiffs themselves as terrorists. That's a pretty good deterrent effect. A deterrent effect, Your Honor? Yeah, to making such statements again. That's true, and that's why plaintiffs are, I think, bringing this claim, because they don't want the Attorney General to make similar statements in the future. But, again, to obtain an injunction for a constitutional violation under Section 1983, they have to show an ongoing violation of law, and they just point to statements during a press conference now nearly two years ago. And, again, they merely speculate that the Attorney General will make similar statements in the future. Plaintiffs' constitutional claims also fail on the merits. Just briefly, as a Supreme Court recently held in Hulot, a state officer can share her views freely and criticize particular beliefs, and she can do so forcefully. That is exactly what the Attorney General did here. She used forceful language in describing the unlawful activities of certain Red Rose Rescue members in New York State, and she did not threaten any adverse action against plaintiffs themselves, certainly not due to any speech or political advocacy they engaged in. So the complaint does not plausibly allege that the Attorney General used the power of the state to punish or suppress plaintiff's political advocacy. Unless there are any further questions, I'll rest on my briefs. Thank you. Thank you. Attorney Mews. Thank you. I want to address the redressability, because the Parsons case made a good, and really it goes even to the issue of standing in some respects. It said, as in Meece, a judgment declaring that the actions in question are unconstitutional would eliminate the need to choose between First Amendment-protected activity and incurring the risk that public perception of this criminal enforcement scheme will harm their reputation. We're talking about reputational harm. And it goes on to say the declarations the juggalos seek would likely combat at least some future risk that they would be subjected to reputational harm and chill to the force of the DOJ's criminal gang or gang-like designations. And bear in mind, this video, which has these defamatory statements, is still up on the Attorney General's website. I mean, even a prospective relief could be in order removing it. One of the things I'm wondering, some of the cases that you've cited deal with what I would call official governmental designations as gang or this or that. And I'm wondering, and here the Attorney General specifically says, no, no, no, this isn't, they're not designated as terrorists. I use that term because of the conduct I just described. Does that put this in a slightly different box, or am I putting too much significance on that distinction? No, I don't think it puts it in a different box because it's the Attorney General of New York who's the chief law enforcement officer. Now, if it was some low-level official who had no law enforcement duties whatsoever, that might be a different category. And I think there needs to be a distinction between the oven concerning, although I think we meet the oven concerning for defamation, and the reputational harm coupled with chill necessary for standing purposes. And the distinction, look at this court's decision, the Oneida case, where it distinguished why in that case there wasn't the reputational harm because there was nothing derogatory about just the name that was selected for the Oneida Indians comparing to the labels of political propaganda, communist, and hybrid gang. It was the nature of the labels, the derogatory nature of the labels. And quite frankly, terrorists or terrorist group is probably more derogatory. That was the reputational harm. There's no evidentiary burden that we have under Rule 12b-1 for standing purposes. And I think it's self-evident. If someone's going to call you a terrorist and belonging to a terrorist group, that's going to cause reputational harm. It's almost self-evident. The issue with Meese, he needed this additional information because it was a derogatory label applied to a video he intended to show. I mean, it's multi-steps removed from declaring him something that is negative or the organization he belongs to as being negative. So I think for standing purposes, it's just reputational harm in conjunction with the chilling effect of which this plaintiff would have as we allege to this pro-life group. And the public is dealing again with whether the rating plaintiff, the rating public acquainted with the individuals would understand that the statements are about them. Attorney Meese, your time's up, so if you want to wrap it up, I'll give you one last statement. Thank you, Your Honor. I think the case law makes plain that we've established standing and that these statements are defamatory per se. And the issues before the court are the ones that the district court below addressed. He didn't address the issue of immunity, which doesn't apply here to prospective relief, nor the privilege. And I think based on this record, Judge, the court has to be reversed because this comes before the court on a Rule 12 motion, and he claimed that he wasn't persuaded by the allegations, which showed he didn't apply the proper standard. He wasn't acting as a judge ruling on a Rule 12 motion. Thank you. We have one more question, sir. You keep saying defamation per se. Let's leave that there. New York has the most convoluted discussions of what per se means, but let's assume we know what it means. Are you saying by constantly saying per se, are you saying that they did not suffer any real damages so we don't have to prove anything? It's just per se, no damages need to be proved. No, Your Honor. I think if it came to trial, if the court declares it's not per se, we believe it is per se because New York case was pretty clear. But you are prepared to prove that they suffered actual damages? If it comes to trial, we will, Your Honor. But you haven't – have you pled them? We haven't pled specifics other than you have individuals who are being deterred from joining the organization. You have donor deterrence and others. I mean, we're going to have to – obviously, we're going to have to come forward with facts. That's why Rule 12, we're where we are. Thank you. Thank you. I appreciate the arguments on both sides. We'll take it under advisement and get back to you. Thank you.